## A LABOR UNION BOYCOTT BASED ON RACIAL GROUNDS IS SUBJECT TO INJUNCTION.

Common Pleas Court of Cuyahoga County.

WILLS V. LOCAL NO. 106 OF THE HOTEL AND RESTAURANT EMPLOYES INTERNATIONAL ALLIANCE, ET AL.

Decided, July 2, 1927.

*Boycott begun by a White Labor Union—Because the Place Employed Colored Help.*

Injunction lies against the boycott of an eating place by a branch of the Hotel and Restaurant Employes International Alliance, where the sole ground of the boycott is that the place is employing colored help, and it appears that the application of these colored employes for a charter for a Waiters & Restaurant Employes Union has been denied on racial grounds.

IRVING CARPENTER, J.

This is an action seeking an injunction to restrain the defendants from picketing plaintiff's place of business, a country roadhouse, with from three to five automobiles in the highway in front, all bearing banners saying that plaintiff's place is "Unfair to Organized Labor."

The admitted and undisputed facts reveal a very unusual situation. It differs in several respects from most cases of this character.

Plaintiff's property is located in the village of Valley View, one of the numerous suburban municipalities in this county, and is eleven miles from the Cleveland Public Square; it is on a country road which is improved with a pavement about fourteen feet wide; there are several somewhat separated houses on the same side of the road as plaintiff's property, but on the opposite side and next to the highway line is a canal; in fact the highway is called Canal Road.

Plaintiff's property consists of about three acres of land on which is located a building used by the plaintiff and his family the year around as a residence and a large restaurant, capable of serving 275 to 300 guests at once. This business is only operated in the summer and during the mild weather of spring and fall. The week day patronage is very small, and some evenings of the week slight. Saturday night, and Sunday and holidays are the only time business is brisk.

Plaintiff began the business four years ago last spring, and since then has purchased the property paying for it, he says, $18,000 and since has made some improvements and additions to it.

The first three years of plaintiff's operation of the place he employed union waiters and cooks exclusively, but he says that owing to the distance of the place from the city of Cleveland and his intermittant and irregular demand for such help that the union waiters and cooks were dissatisfied and did not render service satisfactory to plaintiff or his patrons.  Hence a year ago last spring he did not employ union help, but instead hired non-union colored waiters and cooks.  He paid them the same scale of wage as fixed by the union and the conditions under which they were required to work conformed to the union standard in every respect.  He employs four regular waiters and five extras who only come on special occasions when crowds are expected.  The number of cooks employed was not shown by the evidence but from the number of waiters it can be inferred it is not large.

Last year the unions said nothing to him about his employes, and at the beginning of this season, by verbal contracts, he re-employed substantially the same group of colored waiters and cooks for this season.  About two days before he planned to reopen his place, the first part of last April, defendant Edward Whissemore, business agent of defendant Local No. 106, the Waiters Union, and Martin Spiegel, the vice-president of that local, called upon him and demanded of him that he employ white help and members of their union.  He told them they were too late, that he had already re-employed his help of last season, that it had been satisfactory, and that the union help in years before had not been.  They told him he might take his choice of any of their unemployed members.  This he refused under the circumstances and they told him they would "give him a battle."

Some time later they began the picketing by the use of automobiles upon the road in front of his place at the times when his customers would be going there, particularly Saturday nights. The automobiles bore on the back thereof large cloth banners which said in large letters in substance, that "Wills' Terrace Garden is unfair to or-

ganized labor," and was signed by the initials of the union. There is some dispute about the conduct of the drivers of the automobiles and the persons riding with them.

In all about twenty-five men and women, all members of the defendant unions or their wives, participated in driving or riding in these automobiles.

After this agitation started, at the request of plaintiff, two of his colored employees went to Cincinnati, to the international headquarters of the union, and saw the secretary of the supreme body and asked if a charter for a colored local for Cleveland could be granted to them and other colored waiters here. He told them to see defendant Whissemore, and if he would consent to it the charter might be arranged, but not unless approved by Whissemore. They saw Mr. Whissemore and he told them "Nothing doing," and their efforts to form a union ceased. It should be added that the constitution of defendant Local No. 106 restricts its membership to *white* persons.

At this length these facts have been here stated, and from them it appears that there existed no real trade dispute; both the employer and his employees are satisfied with each other, the standards of the union both as to wages and working conditions are being observed.

The employes wanted to affiliate with the union and the employer wanted them to, and they went to no little trouble trying to do so, and were refused by these defendants, solely because of their race.

This court recognizes the very well established rights of union labor under certain conditions to inform the public of the fact that an employer does not employ union labor, and the employer who chooses not to do so can not complain if such information causes loss to his business. There are many precedents, in Ohio and elsewhere, supporting this proposition. The case of *Clark Lunch Co.* v. *Local* 106, 22 Ohio App., 265, by the Court of Appeals of this district is one of the outstanding authorities on this subject, but from the above stated facts, this case differs very materially from the Clark case in many respects. To much the same effect is *La France etc.* v. *Brotherhood,* 108 O. S. 61. Modern industrial conditions have made necessary the co-operation of the laboring group, and the union has generally very well ministered

to this necessity. The ideal of all union efforts is and must be the improvement of the social and economic condition of those who work, and the law seeks to protect the union in the fair accomplishment of such ideal.

This boycott does not appeal to this court of equity as conforming to this standard. In its last analysis it is a case of white men opposing colored men. As this court sees it the only information these defendants could properly and truthfully give the public about plaintiff is that he employs colored people, and I do not believe these defendants care to advertise that fact as such.

It does not appeal to this court of equity as fair for these defendants to say to the public that plaintiff is "unfair to organized labor" under the undisputed facts.

The motive prompting this attack on the plaintiff under these circumstances can not be justified by this court. In fact the witness Martin Spiegel, who in addition to being vice-president of Local 106 is custodian of the headquarters of both of the defendant locals, to which service he gives his entire time and receives a salary of sixty dollars per week, frankly says that he conceived this campaign against Wills. To quote him:

"I started picketing because I wanted him to employ *white* waiters. I got the banners, I did this work to gain votes in the election next week, that I may be re-lected custodian. If you expect to hold office in a union, you must do something for the union."

This court feels that under all these circumstances justice requires that the temporary restraining order prayed for be granted, and such order may issue on the execution by the plaintiff of a bond in the sum of $600.

It has been urged that plaintiff, having made contracts with his employees for this season, it is unlawful for defendants by this boycott to seek to coerce him into violating and abrogating such contract. But in view of the fact that the injunction is based upon rights of the plaintiff, more important, in the opinion of this court, than such contracts, this claim has not been seriously examined or considered and is not here decided. Nor does the court find it necessary to express any opinion as to the manner in which the picketing was conducted.